United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GUADALUPE CORNEJO,

        Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

_____/

No. C-14-0082 EMC

**ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY
JUDGMENT**

**(Docket Nos. 18, 20)**

      Pursuant to 42 U.S.C. § 405(g), Plaintiff Guadalupe Cornejo seeks judicial review of the
Commissioner's final decision denying her applications for disability insurance benefits and
supplemental security income.  Ms. Cornejo seeks an order reversing the Commissioner's decision
and awarding payment of benefits or remanding for further proceedings.  Defendant Carolyn W.
Colvin in her capacity as Commissioner of the Social Security Administration ("Commissioner")
cross-moves for summary judgment.  The Commissioner's cross-motion is unopposed.[1]  Having
considered the parties' briefs and accompanying submissions, the Court hereby **DENIES** Ms.
Cornejo's motion and **GRANTS** the Commissioner's.

---

     [1]  Although not set forth in the Commissioner's papers, it seems that the Commissioner
intends both to oppose Ms. Cornejo's motion for summary judgment and cross-move.  This appears
to have been anticipated by the parties' briefing schedule, which was set by stipulation.  Docket No.
17.  Ms. Cornejo did not file a reply/opposition, which was due on or before July 23, 2014 under the
stipulated schedule. *Id.*

**United States District Court**
For the Northern District of California

## I.   **FACTUAL & PROCEDURAL BACKGROUND**

A.      Physical Injuries

In 2004, Ms. Cornejo first reported a left shoulder injury that was believed to be a repetitive stress injury from her work as a sous chef.  Administrative Record ("AR") 177-79, 186, 521.  Ms. Cornejo's left shoulder injury apparently resolved; in 2010, examining physician Dr. Calvin Pon found that Ms. Cornejo had no limitations as to her left shoulder.  AR 226-44; 601-04; 832.  In 2005, Ms. Cornejo injured her back while lifting some heavy boxes at work.  AR 521.  Ms. Cornejo then began to report being depressed as a result of her back injury.  AR 526.  A few months after her back injury, also in 2005, Ms. Cornejo injured her right knee.  AR 524.  Later, in August of 2006, Ms. Cornejo injured her right shoulder while cooking.  AR 534.  In early 2007, Ms. Cornejo received surgery for her back in which she had an artificial disc replacement.  AR 226; 532.  She showed improvement as of December of 2007, at which time her treating doctor, Dr. Naraghi, recommended that she return to work part time at a modified level.  AR 226-34.  In April of 2008, however, after continued issues with her right shoulder, Ms. Cornejo had another surgery for tendinosis and impingement correction of her right shoulder, in which a part of the shoulder joint was removed. AR 832, 835.  In terms of Ms. Cornejo's physical injuries, only the shoulder injury is at issue in the pending motions.

Ms. Cornejo was treated by multiple doctors for her different injuries.  Dr. Lau, Ms. Cornejo's primary treating physician for her shoulder injury, expressed his belief in her ability to return to work at various times.  For example, in August of 2008, Dr. Lau found Ms. Cornejo to be able to return to work, with the limitation that she was not to lift more than 10 pounds.  AR 475.  On September 25, 2008, Dr. Lau reported that Ms. Cornejo could return to full duty, per Dr. Halbrecht, the surgeon who performed her arthroscopic surgery.  AR 474.  On October 24, 2008, Dr. Lau again noted that Ms. Cornejo could return to full duty with no limitations or restrictions, AR 473, an opinion he repeated a week later on October 31, 2008.  AR 472.  Dr. Lau again opined that Ms. Cornejo could return to full duty without restrictions on December 5, 2008, although less than a month later, Dr. Lau opined that Ms. Cornejo could return to work with the limitation of not lifting over 25 pounds.  AR 470.

2

**United States District Court**
For the Northern District of California

B.     Mental Health

As a result of her pain symptoms from her physical injuries, Ms. Cornejo experienced mental health issues.  As Ms. Cornejo testified at the hearing, she would not have experienced depression without the pain.  AR 814.  Ms. Cornejo's testimony aligns with testifying expert Dr. McDevitt's opinion that Ms. Cornejo's mental disorder was real, but her depression was "secondary to her perception of her physical impairment."  AR 819.  In other words, Ms. Cornejo has no "intrinsic mental disorder" independent of her perception of pain.  *Id.*  Dr. McDevitt summarized the medical record, relying particularly on treating psychologist Dr. Rosales's evaluation, and concluded that Ms. Cornejo suffered from maladaptive pain syndrome, which caused her to exaggerate, both unconsciously and consciously, her pain and impairment.  AR 817; 819.

1.     Mental Health Treatment

Ms. Cornejo was initially treated for her mental health issues by psychologist Dr. Rosales from 2006 to 2007.  She met with Dr. Rosales approximately 13 times for counseling.  AR 515.  In October of 2007, consistent with his earlier findings, Dr. Rosales concluded that Ms. Cornejo's energy, motivation, thought processes, speech, concentration, attention, memory, abstracting abilities, judgment, and insight were all within normal limits.  AR 329; 547; *see also* earlier reports at AR 335; 341.

Ms. Cornejo later met with a licensed clinical social worker, Linda Wu, from May of 2011 to March of 2012.  Ms. Wu assisted Ms. Cornejo with behavioral interventions aimed at managing her pain and anxiety.  AR 763.   Ms. Wu did not focus on assessing Ms. Cornejo for a specific psychiatric disorder.  Instead, Ms. Wu offered Ms. Cornejo the option of an assessment and related psychiatric services, which Ms. Cornejo declined.  AR 763.

Other than her treatment by Dr. Rosales, Ms. Cornejo did not seek psychiatric care again until June of 2012, *i.e.*, after the hearing.  Dr. Perez, a psychotherapist, began treatment of Ms. Cornejo on June 14, 2012, and wrote an evaluation on July 18, 2012.  Dr. Perez concluded that Ms. Cornejo had marked impairment in social functioning and marked limitations in concentration, persistence, and pace.  AR 779.

United States District Court
For the Northern District of California

Ms. Cornejo's primary care physician also filled out a mental functional assessment form on or around March 9, 2012. Dr. Rapp is a treating physician, but does not appear to have treated her for mental health issues.[2] Dr. Rapp specifically noted at the beginning of the assessment "[n]eed psychiatrist to complete this evaluation[;] see attached letter from LCSW." Dr. Rapp then attached the letter in which Ms. Wu states that Ms. Cornejo was offered, but declined to pursue psychiatric treatment. AR 763. Dr. Rapp nonetheless completed the mental health assessment form, noting moderate impairment to Ms. Cornejo's activities of daily living, slight impairment to social functioning, moderate impairment to concentration, persistence, or pace, and marked impairment to ability to adapt to work type settings. AR 761-62.

2.    Mental Health Consultations

Ms. Cornejo saw several consulting examining psychiatrists and psychologists over the years. In 2008, Dr. Lieberman, acting as agreed medical examiner and with the assistance of Dr. Bernard Bauer, reviewed Ms. Cornejo's records and directly evaluated her for 2.5 hours. In his 42-page report, Dr. Lieberman summarized the medical record and his own findings, concluding that Ms. Cornejo had mild to moderate impairment of her activities of daily living, mild impairment in social functioning, mild to moderate impairment in concentration, and moderate impairment in adaptation. AR 550-51.

In July of 2010, clinical psychologist Dr. Ahmed El-Sokkary examined Ms. Cornejo. He performed an evaluation that was "limited in scope and based on a single, time-limited session." AR 598-600. Dr. El-Sokkary concluded that Ms. Cornejo was "an individual with borderline cognitive abilities, with symptoms of depression." *Id.* He found that she "demonstrated a limited capacity to understand, remember, and perform simple tasks." *Id.* On the other hand, he observed that Ms. Cornejo was "cooperative throughout the evaluation" and "capable of communicating adequately."

---

[2] The Commissioner characterizes Dr. Rapp as a psychiatrist; however, that specialization does not appear in the record. AR 38, 761, 766. Instead, Dr. Rapp represented that he was one of Ms. Cornejo's primary care medical providers, and he specifically indicated the need for psychiatric evaluation in his assessment. AR 761. Dr. Rapp's finding that psychiatric evaluation was needed corresponds with the ALJ's observation that Ms. Cornejo did not actively seek psychiatric care for much of the period of her claimed disability.

4

United States District Court
For the Northern District of California

1   *Id.* He concluded that Ms. Cornejo would have only "mild difficulties" adhering to a regular work

2   schedule. *Id.*

3   In August of 2010, psychiatrist Dr. G. Norbeck assessed Ms. Cornejo, based on her medical

4   record, apparently without examination. Dr. Norbeck assessed Ms. Cornejo with respect to 20

5   categories relating to understanding and memory, sustained concentration and persistence, social

6   interaction, and adaptation. AR 573-78. Dr. Norbeck found Ms. Cornejo to be moderately limited

7   in her ability to maintain attention and concentration and her ability to set realistic goals. He found

8   Ms. Cornejo to be markedly limited in her ability to understand and remember detailed instructions

9   and her ability to carry out detailed instructions. With respect to the other 16 categories that he

10  assessed, Dr. Norbeck determined that Ms. Cornejo was not significantly limited. *Id.* Applying

11  these findings to the Social Security Administration's Residual Functional Capacity assessment, Dr.

12  Norbeck concluded, based on Dr. El-Sokkary's testing, that Ms. Cornejo had borderline intellectual

13  functioning, with a full-scale IQ of 71. AR 573-78; 581. Dr. Norbeck went on to find that Ms.

14  Cornejo had no restriction as to activities of daily living, no difficulties in maintaining social

15  functioning, and moderate difficulties in maintaining concentration, persistence, or pace. AR 573-

16  78.

17  Approximately one year later, in July of 2011, clinical psychologist Dr. Caroline Salvador-

18  Moses evaluated Ms. Cornejo. AR 594-97. In her report, Dr. Salvador-Moses noted that Ms.

19  Cornejo has friends with whom she enjoys visiting and with whom she interacts "frequently." *Id.*

20  She also noted that Ms. Cornejo was adequately groomed and reported being able to take care of her

21  personal care. *Id.* She described Ms. Cornejo's daily activities as primarily involving providing

22  child care for her 3-year-old granddaughter. *Id.* Other activities included visiting with friends,

23  reading, going for walks, and attending religious activities. *Id.* Dr. Salvador-Moses found Ms.

24  Cornejo's "overall cognitive abilities [to be] severely impaired" and assigned Ms. Cornejo a

25  prorated full scale IQ of 60, which is "extremely low." *Id.* Dr. Salvador-Moses opined that Ms.

26  Cornejo "shows severe impairment in her concentration, pace, and persistence." *Id.*

27  A few months after Dr. Perez began treatment in June of 2012, Dr. Steven Balt, a

28  psychiatrist, evaluated Ms. Cornejo in September of 2012. Dr. Balt noted that, "[o]n a typical day

1    [Ms. Cornejo] bathes herself, goes for walks, takes her granddaughter to school, and rests."  He

2    commented that "[s]he is able to go to the market on her own and she is able to take care of herself."

3    He also noted that Ms Cornejo "said she gets along 'very well' with her family and friends."  He

4    observed that Ms. Cornejo is able to manage her finances.  Dr. Balt opined that Ms. Cornejo had a

5    fair prognosis.  He commented on Ms. Cornejo's "limited" psychiatric treatment, and noted that

6    "[w]ith more aggressive treatment her psychiatric symptoms may resolve . . . ."  AR 789.  Dr. Balt

7    concluded that Ms. Cornejo had mild to moderate limitations in her ability to understand, remember,

8    and carry out instructions.  Dr. Balt also concluded that Ms. Cornejo had mild to moderate

9    limitations on her ability to interact appropriately with supervisors, co-workers, and the public.  AR

10   790-91.

11   C.        Procedural Background & Hearing Testimony

12          On March 23, 2010, Ms. Cornejo filed a Title II application for a period of disability and

13   disability insurance benefits.  AR 27.  Ms. Cornejo also filed a Title XVI application for

14   supplemental security income.  *Id.*  In both applications, Ms. Cornejo stated that her disability began

15   on September 14, 2006.  AR 27.  These claims were initially denied on September 13, 2010, and

16   again on reconsideration on August 25, 2011.  *Id.*  Ms. Cornejo then sought a hearing before an

17   administrative law judge ("ALJ").

18          A hearing was held before ALJ Judson Scott on May 9, 2012.  *Id.*  Ms. Cornejo appeared and

19   testified at the hearing.  *Id.*  The ALJ called to testify Robert J. McDevitt, M.D., and Wesley E.

20   Scott, M.D., medical experts, and Jeffrey S. Malmuth, a vocational expert.  *Id.*  Ms. Cornejo was

21   represented by counsel at the hearing.  *Id.*  Dr. McDevitt is a psychiatrist; Dr. Scott is an orthopedist.

22          1.        Dr. Scott Testifying Opinion

23          Dr. Scott testified that Ms. Cornejo had limitations on her right shoulder function, including

24   loss of range of motion to 110 degrees, as a result of her right shoulder surgery.  AR 832.  Dr. Scott

25   opined that Ms. Cornejo's right shoulder impairment would limit Ms. Cornejo to occasional

26   overheard reaching with her right arm.  AR 840.  Consistent with Dr. Pon's evaluation, AR 601-04,

27   Dr. Scott opined that there was no basis in the record for any limitations in Ms. Cornejo's left

28   shoulder function.  AR 840.

2.       Dr. McDevitt Testifying Opinion

Dr. McDevitt testified that Ms. Cornejo had a moderate depressive disorder, which corresponds with the Social Security Administration's Mental Disorder Listing section 12.04.  AR 817-20.  He found that Ms. Cornejo did not meet the category B criteria, *i.e.* marked restriction of activities of daily living; marked difficulties in maintaining social functioning; or marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation.  *Id.*  Nor did Dr. McDevitt find that Ms. Cornejo met the category C criteria.  *Id.*  As a result, he found that Ms. Cornejo's depressive disorder was not of the required level of severity to qualify her for disability.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.  Dr. McDevitt also opined that Ms. Cornejo did not meet the same category B criteria with respect to a somatoform disorder diagnosis under section 12.07.  *Id.*  Dr. McDevitt found no limitations on Ms. Cornejo's activities of daily life, moderate limitations on her social functioning (but no limitations within a Spanish-speaking community), and only hypothetical potential for some restriction on her concentration, persistence, and pace.  *Id.*  Dr. McDevitt observed that Ms. Cornejo had never experienced any major decompensation, such as hospitalization or urgent mental health care.  *Id.*

Ms. Cornejo's counsel questioned Dr. McDevitt regarding his view of the evaluations of Dr. Salvador-Moses and Dr. El-Sokkary.  AR 828-31.  Dr. McDevitt commented that Dr. Salvador-Moses assessed a global assessment of functioning ("GAF") score of 55, which he opined suggests moderate symptoms or moderate difficulty in social or occupational functioning.  Dr. McDevitt observed that the clinical findings as to GAF were consistent with his opinion that Ms. Cornejo did not meet the listing limitations.[3]  AR 829.

---

[3] At least some of Dr. McDevitt's assumptions appear to be based on findings that are either not supported by the medical record or lacking in strong support.  For example, Dr. McDevitt stated at the hearing that Dr. Salvador-Moses assessed a GAF of 60.  The record reflects that Dr. Salvador-Moses assessed a GAF score of 55.  It was Drs. Lieberman and El-Sokkary who assigned GAF scores of 60.  AR 550; 600.  Dr. McDevitt also incorrectly assumed that Dr. Salvador-Moses conducted her examination with the aid of an interpreter when the record reflects that Dr. Salvador-Moses conducted her examination in Spanish.  AR 828-30; 594-97.  Nevertheless, the ALJ did not specifically rely on any of these minor errors in his decision.  For example, while the ALJ agreed with Dr. McDevitt that Dr. El-Sokkary's opinion should be discounted due to being conducted with an interpreter, the ALJ discounted Dr. Salvador-Moses's opinion for other reasons.  Similarly, the error regarding the GAF score appears immaterial, as a GAF of 55, like a score of 60, falls in the "moderate symptoms" range.  *See* Diagnostic and Statistical Manual of Mental Disorders at 32 (4th

United States District Court
For the Northern District of California

3.      Decision

On January 11, 2013, ALJ Scott issued a partially favorable decision, finding Ms. Cornejo disabled from September 14, 2006 through October 31, 2008.  AR 27-42.  The ALJ found that Ms. Cornejo met the insured status requirements of the Social Security Act through December 31, 2011.  AR 31.  The ALJ evaluated Ms. Cornejo's claim using the five-step process set out in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).  AR 31, 34, 40.  At step one, the ALJ found that Ms. Cornejo had not engaged in substantial gainful activity since September 14, 2006, her alleged onset date of disability.  At step two, he determined that, from September 14, 2006 through October 31, 2008, Ms. Cornejo suffered from the following severe impairments: lumbar spine degenerative disc disease, status post-surgical disc replacement at L4-5; obesity; depression; anxiety; maladaptive pain syndrome; and status post right shoulder surgery for tendinosis and impingement correction.  The ALJ declined to afford much weight to certain treating doctor's opinions that Ms. Cornejo was able to return to work earlier than the ALJ's end date of her disability, *i.e.,* certain doctors opined that Ms. Cornejo could return to work *before* October 31, 2008.  As early as December 2007, Dr. Naraghi opined that Ms. Cornejo could work part time, and Dr. Lau opined that Ms. Cornejo could return to work in August of 2008.  Notwithstanding those opinions, the ALJ determined that Ms. Cornejo continued to be disabled through October 31, 2008.  AR 34.  At step three, the ALJ found that Ms. Cornejo's impairments equaled a listed impairment.  Nevertheless, the ALJ found that Ms. Cornejo's medical condition improved on November 1, 2008, ending her disability.  Thus, the ALJ proceeded to step four, where he found that, beginning November 1, 2008, Ms. Cornejo retained the following residual functional capacity:

> she requires a sit-stand option for comfort; can perform occasional postural activities but never kneel, crawl, or climb ladders, ropes, or scaffolds; is limited to occasional overhead reaching or work; can perform the range of simple repetitive through complex tasks; has no restriction in contact with others in a Spanish-only environment; and is limited to low-stress occupations defined as with few changes in the work or its setting.

AR 36.

_____

ed. 2000).  Moreover, Ms. Cornejo does not argue that Dr. McDevitt's minor errors contributed to any legal error by the ALJ..

United States District Court

For the Northern District of California

1    The ALJ determined that Ms. Cornejo's impairments could be expected to produce her

2    alleged symptoms, however he found Ms. Cornejo's representation of the intensity, persistence, and

3    limiting effects of those symptoms to be not credible.  AR 36.  The ALJ recited clinical findings

4    from physical exams showing, among other things, that Ms. Cornejo's range of motion was normal,

5    that Ms. Cornejo had intact motor strength and sensation, and that MRI findings did not support Ms.

6    Cornejo's reported radiculopathy.  AR 36-37.  The ALJ also observed that Ms. Cornejo used

7    ibuprofen and Tylenol with codeine for her pain, medications that are consistent with mild to

8    moderate pain.  Moreover, the ALJ cited the evaluations of mental health experts who opined that

9    Ms. Cornejo suffers from a mental disorder that causes Ms. Cornejo to exaggerate her pain

10   symptoms.  *Id.*  While the ALJ found that Ms. Cornejo's allegations of the limiting effects of her

11   symptoms were not credible, he nonetheless concluded that Ms. Cornejo could not perform her past

12   work as a cook.  Therefore, the ALJ proceeded to step five.  Relying on the testimony of vocational

13   expert, Mr. Malmuth, the ALJ concluded at step five that Ms. Cornejo was capable of performing

14   other jobs existing in significant numbers in the national economy.

15       On October 21, 2013 the Appeals Council granted Ms. Cornejo's request for review and

16   reopened the ALJ's decision.  AR 9-12.  The Appeals Council found that Ms. Cornejo was not

17   eligible for disability benefits because, based on the ALJ's determination that her disability ended on

18   October 31, 2008, her disability ended more than twelve months before she filed her application in

19   March of 2010.  AR 12A-12B.

20       Ms. Cornejo requested judicial review.  She raises two objections to the ALJ's decision:  (1)

21   Ms. Cornejo argues that the ALJ erred in accepting testimony by the vocational expert that she

22   alleges conflicted with the Dictionary of Occupational Titles ("DOT"); and (2) Ms. Cornejo argues

23   that the ALJ improperly rejected the mental health opinions of Drs. McDevitt, Rapp, Perez,

24   Salvador-Moses, and El-Sokkary.  If Ms. Cornejo is correct, and she is not capable of performing

25   other jobs or is disabled due to her mental health disorder, then she continues to be disabled, and her

26   disability application would have been timely.

27

28

**United States District Court**
For the Northern District of California

## II.   DISCUSSION

A.   Standard for Reviewing the ALJ Decision

After a final decision by the Commissioner, a petitioner may seek judicial review of that decision by a district court. 42 U.S.C. § 405(g). The Commissioner's decision will only be disturbed if the ALJ's findings as to any fact are based on legal error or are not supported by substantial evidence. *Id.*; *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). Substantial evidence is relevant evidence – more than a scintilla, but less than a preponderance – that a reasonable mind may accept to support a conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001). In evaluating whether substantial evidence supports a finding, the court considers the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence supports more than one rational interpretation, the Court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

B.   Vocational Expert

One of Ms. Cornejo's two objections to the ALJ's decision pertains to his step five determination. Ms. Cornejo alleges that the ALJ erroneously found that she could perform other jobs in the national economy, because the vocational expert testified regarding jobs that require "frequent" reaching. Ms. Cornejo argues that the vocational expert's testimony conflicts with her residual functional capacity limitation to "occasional overhead reaching." Docket No. 18 at 7.

At the fifth step of the sequential evaluation process set out in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the burden shifts to the Administration to demonstrate that the claimant is not disabled. 20 C.F.R. § 404.1520(g). Specifically, the Administration must show that the claimant can engage in some type of substantial gainful activity that exists in "significant numbers" in the national economy. *Id.* The ALJ may meet that burden under step five by propounding to a vocational expert a hypothetical that is based on medical assumptions supported by substantial evidence in the record and that reflects all of the claimant's limitations. *See, e.g.*, *Roberts v.*

United States District Court

For the Northern District of California

1   *Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).  The ALJ's hypothetical must be "accurate, detailed, and

2   supported by the medical records."  *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).  In

3   responding to the hypothetical, the vocational expert testifies as to: (1) what jobs the claimant would

4   be able to perform; and (2) the availability of such jobs in the national economy.  *Id.*

5         Occupational information provided by a vocational expert should generally be consistent

6   with the Dictionary of Occupational Titles ("the DOT").  Social Security Ruling ("SSR") 00-4p.

7   When a vocational expert provides evidence about the requirements of a job, the ALJ has a duty to

8   inquire about "any possible conflict" between that evidence and the DOT.  *Id.*  An ALJ's failure to

9   inquire is error, although the error is harmless if no actual conflict existed or if the vocational expert

10  provided sufficient evidence to support the conclusion.  *Massachi v. Astrue*, 486 F.3d 1149, 1154

11  n.19 (9th Cir. 2007); *see also Fritz v. Comm'r of Soc. Sec. Admin.*, 480 Fed. App'x 886, 887 (9th

12  Cir. 2012).  If the ALJ finds that a conflict exists, he or she "must then determine whether the

13  vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying

14  on the expert rather than the [DOT]."  *Massachi*, 486 F.3d at 1153.

15        Here, the ALJ directed the vocational expert to consider what work an individual of Ms.

16  Cornejo's age, education, and residual functional capacity would be able to perform.  AR 840.  The

17  residual functional capacity limitations that the ALJ outlined for the vocational expert in the

18  hypothetical included "[m]anipulative restrictions [ ] *only regarding the right shoulder* and [ ] would

19  prohibit more than occasional overhead work with the *right* upper extremity.  *Id.* (emphasis added).

20  No other manipulative restrictions were identified."  *Id.*  The ALJ's decision to limit only the

21  function of the right shoulder was supported by the medical record.  The ALJ afforded significant

22  weight to the opinions of Drs. Pon and Scott.  Both Drs. Pon and Scott assessed a limitation to

23  occasional overhead reaching in Ms. Cornejo's right arm, but found that Ms. Cornejo had no

24  limitation on the use of her left arm.  AR 38, 604, 840.

25        The ALJ then accepted the vocational expert's testimony that a person with such restrictions

26  could perform work as a small products assembler (DOT No. 706.684-022), production assembler

27  (DOT No. 706.687-010), or molded frames assembler (DOT No. 713.684-014).  AR 841.  The DOT

28  describes each of these jobs as requiring "frequent" reaching, which is defined as "[e]xist[ing] from

United States District Court

For the Northern District of California

1   1/3 to 2/3 of the time." *See* Docket No. 18, at Exs. 1-3.  A DOT companion publication and a Social

2   Security policy statement define "reaching" as "[e]xtending the hand(s) and arm(s) in any direction."

3   U.S. Dep't of Labor, Selected Characteristics of Occupations Defined in the Revised [DOT], App. C

4   (1993).

5          Where a claimant has unrestricted use of one arm, a residual functional capacity limitation to

6   occasional overhead reaching in the other arm does not conflict with DOT requirements of frequent

7   overhead reaching.  *See Sims v. Colvin*, C-13-1755 LHK, 2014 U.S. Dist. LEXIS 92756, at *22-24

8   (N.D. Cal. July 7, 2014) (holding that the vocational expert's testimony that a person limited to

9   occasional left overhead reaching could perform occupations that require frequent reaching was not

10  inconsistent with the DOT where the person had an unrestricted right arm.); *McConnell v. Astrue*,

11  C-08-667, 2010 U.S. Dist. LEXIS 46156, at *7 (C.D. Cal. May 10, 2010) ("The Court finds no

12  actual conflict between plaintiff's abilities and the DOT requirements [of frequent or occasional

13  reaching] . . . [because] plaintiff has no significant limitations in the use of his left arm and hand,

14  and thus would be capable of performing such requirements."); *Rerkphurutat v. Astrue*, C-10-8007,

15  2011 U.S. Dist. LEXIS 126759, at *4 (C.D. Cal. Nov. 2, 2011) (finding that "[the DOT] does not

16  require the ability to reach frequently with *both* hands" (emphasis in original)); *cf. Newman v.*

17  *Astrue*, C-11-512, 2012 U.S. Dist. LEXIS 71973, at *5 (C.D. Cal. May 23, 2012) (finding a conflict

18  between the vocational expert's testimony and the DOT where vocational expert opined that plaintiff

19  could perform jobs that required frequent reaching but claimant could not do work above shoulder

20  level *on either side*).

21         Ms. Cornejo had unrestricted use of her left arm.  Viewed in the context of the evidence as a

22  whole, *see Mayes*, 276 F.3d at 459, there was no conflict between Mr. Malmuth's testimony and the

23  DOT.  Accordingly, while the ALJ committed a procedural error in failing to ask the vocational

24  expert at the hearing whether there was any conflict between the vocational expert's testimony and

25  ///

26  ///

27  ///

28  ///

United States District Court

For the Northern District of California

1   the DOT, such error was harmless due to the lack of actual conflict.[4]  *Massachi*, 486 F.3d at 1154

2   n.19.

3   C.      Mental Health Opinions

4          Ms. Cornejo's second argument is that the ALJ failed to articulate legally sufficient reasons

5   for rejecting the mental health opinions of Dr. McDevitt, M.D., (testifying psychiatric medical

6   expert), Dr. Rapp, M.D., (treating primary care physician), Dr. Perez, Psy.D. (treating psychologist),

7   Dr. Salvador-Moses, Psy.D. (psychological consultative examiner), and Dr. El-Sokkary, Psy.D.

8   (psychological consultative examiner).  Docket No. 18 at 13.  Ms. Cornejo contends that all of these

9   opinions indicate that she was unable to work beyond October 31, 2008.  *Id.*

10         There are three types of medical opinions – treating, examining, and non-examining – and

11  each type is accorded different weight.  *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685,

12  692 (9th Cir. 2009).  Typically, more weight is given to the opinion of a treating physician than the

13  opinion of an examining or non-examining physician because of the continuity of a treating

14  physician's dealings with claimants.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

15  (9th Cir. 2009) ("A treating physician's opinion is entitled to 'substantial weight.'").  In weighing a

16  treating physician's opinion, the ALJ may consider the consistency of the opinion with other

17  substantial evidence in the record as a whole.  20 C.F.R. § 404.1527(c)(2), (4).  While the opinion of

18  a treating source is entitled to greater weight than that of an examining source, the opinion of an

19  examining source is entitled to greater weight than that of a non-examining source.  *Ryan v. Comm'r*

20  *of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

21

22  _____

23         [4]  The ALJ bears the burden of making the necessary inquiry of the vocational expert.  SSR
    00-4p; *see also Massachi*, 486 F.3d at 1152-53.  Nevertheless, the Court notes that Ms. Cornejo's
24  counsel's lack of objection undermines Ms. Cornejo's argument that the ALJ committed error.  *See
    Solorzano v. Astrue*, C-11-369-PJW, 2012 WL 84527, at *6 (C.D. Cal. Jan. 10, 2012) ("Counsel are
25  not supposed to be potted plants at administrative hearings[;] [t]hey have an obligation . . . to raise
    issues that may impact the ALJ's decision while the hearing is proceeding so that they can be
26  addressed.").  Moreover, the record reflects the ALJ's later consideration of potential conflict.  The
    ALJ stated in his decision that he had "determined that the vocational expert's testimony is
27  consistent with the information contained in the Dictionary of Occupational Titles."  The ALJ
    proceeded to address a potential difference, noting that the DOT did not specifically address the sit-
28  stand option in the relevant positions.  He stated that he therefore relied on the vocational expert's
    expertise on the sit-stand option; this option is not at issue in the pending motions.  AR 41.

United States District Court

For the Northern District of California

If a treating doctor's opinion is uncontroverted, it may be rejected by the ALJ only for "clear and convincing" reasons supported by substantial evidence in the record. *See Ryan*, 528 F.3d at 1198. Where a treating or examining physician's opinion is disputed by other opinions, the opinion can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 603-04 (9th Cir. 1989). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). A recital of conclusions does not suffice; the ALJ "must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.*

The opinion of a non-examining physician can only be rejected "by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citing *Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996)). In addition, a non-examining physician's opinion "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). Indeed, an ALJ is not bound by the opinion of any physician, including a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).[5]

1.     Dr. McDevitt

The ALJ assigned the greatest weight to the testifying non-examining psychiatrist, Dr. McDevitt. Dr. McDevitt opined that Ms. Cornejo has maladaptive behavior in coping with her pain, can do simple and complex work, and would have no intellectual or manual restrictions in a Spanish monolingual work environment. AR 39, 821, 823, 826. To reach the conclusion that Ms. Cornejo would have no restrictions in a Spanish monolingual work environment, Dr. McDevitt relied most

---

[5] Factors regarding how much weight to give a medical opinion when the treating doctor's opinion is not adopted as controlling are set forth in 20 C.F.R. § 404.1527(c)(2)(i-ii) and (c)(3-6). *See Garrison v. Colvin,* 759 F.3d 995, 1023 n.11 (9th Cir. 2014). "These factors are length of the treatment relationship and the frequency of examination, § 404.1527(c)(2)(i), nature and extent of the treatment relationship, § 404.1527(c)(2)(ii), supportability, § 404.1527(c)(3), consistency, § 404.1527(c)(4), specialization, § 404.1527(c)(5), and other factors that tend to support or contradict the opinion, § 404.1527(c)(6)." *Id.*

1    heavily on the opinions and clinical findings of Dr. Rosales. At the time of the hearing, Dr. Rosales

2    was the only treating mental health medical source.[6]  Dr. McDevitt testified that Dr. Rosales

3    diagnosed Ms. Cornejo with maladaptive pain behavior that led to "conscious and unconscious

4    exaggeration of her symptomatology and her illness."  AR 817.  As to conscious exaggeration, Dr.

5    McDevitt noted that, at the time of Dr. Rosales's treatment, Ms. Cornejo was "painfully aware that if

6    she becomes too active that will jeopardize [her worker's compensation eligibility]."  *Id.*

7    Nonetheless, Dr. McDevitt found that there was an unconscious component to her symptom

8    exaggeration, that Ms. Cornejo "ha[d] a pain disorder" as of 2010, and that she "endorses [her pain

9    behavior] wholeheartedly and at least believes in it."  AR 824, 827, 828, 829.

10            Dr. McDevitt testified that Ms. Cornejo did not meet the required level of severity under the

11   listing criteria for an affective or somatoform disorder, based on Ms. Cornejo's level of functioning.

12   AR 818.  Dr. McDevitt testified that Ms. Cornejo's records reflect that Ms. Cornejo is socially

13   active, attends church, takes care of her family, and otherwise has not experienced "any periods of

14   decompensation."  AR 819.  Dr. McDevitt noted that, since Ms. Cornejo ceased treatment with Dr.

15   Rosales, she has been in a "limbo" and has not improved.  *Id.*  Despite her lack of treatment or

16   improvement, Dr. McDevitt found that Ms. Cornejo's present level of functioning and the clinical

17   evidence did not support a finding of any limitations within a Spanish speaking environment.  AR

18   819-20.  Dr. McDevitt walked through the "B" and "C" criteria of the listing requirements of

19   affective and somatoform disorders to reach that conclusion.  AR 818-21.

20            After testifying that Ms. Cornejo would have no restrictions in a Spanish-speaking

21   environment, however, Dr. McDevitt testified that Ms. Cornejo's "pain behavior" would interfere

22   with her ability to return to her prior employment as a cook.  AR 822.  Upon cross examination, Dr.

23   McDevitt further testified that, even in a Spanish-speaking environment, Ms. Cornejo would not be

24   able to sustain employment with the presence of her current pain behavior.  AR 824-25.  Dr.

25   _____

26            [6]  Treating psychologist Dr. Perez did not evaluate Ms. Cornejo until after the hearing.  As
      discussed above, Dr. Rapp treated Ms. Cornejo as a primary care physician, but did not provide

27   mental health treatment.  While Ms. Cornejo also met with Ms. Wu, a licensed clinical social
      worker, regarding her mental health issues, Ms. Wu's opinion is not an acceptable medical source.

28   20 C.F.R. § 404.1513(a); (d); *Turner v. Comm'r of Soc. Sec.,* 613 F.3d 1217, 1223-24 (9th Cir.
      2010).  Instead, Ms. Wu's opinion would be considered an "other source" under the regulations.  *Id.*

1   McDevitt then suggested physical therapy and cognitive treatment for eighteen to twenty-four

2   months to break through Ms. Cornejo's maladaptive pain behavior and mental health issues and lead

3   to recovery.  AR 39, 826.  Ms. Cornejo now contends that the ALJ did not properly consider Dr.

4   McDevitt's latter testimony that she would be unable to maintain normal attendance and

5   concentration based on her pain behavior.  AR 824.  However, the portion of Dr. McDevitt's opinion

6   cited to by Ms. Cornejo concerns Ms. Cornejo's pain behavior in its current state as of the hearing

7   date, *i.e.*, absent treatment.  AR 824.  Dr. McDevitt testified that he was opining on "her current

8   state" and went on to note "[s]he's never been really fully treated."  *Id.*  Dr. McDevitt opined that

9   "with appropriate care she should improve."[7]  This opinion is supported by the record.  The record

10  reflects that Ms. Cornejo had declined psychiatric services suggested by Ms. Wu.  AR 763.

11          The ALJ specifically outlined in his decision that he inferred from Ms. Cornejo's election not

12  to pursue treatment that Ms. Cornejo's symptoms "were not so severe as to require formal treatment."

13  AR 37.  This was not error, as the ALJ may "consider lack of treatment in his credibility

14  determination."  *Burch*, 400 F.3d at 681.  Ms. Cornejo's failure to pursue treatment "even if she

15  sought some treatment, is powerful evidence regarding the extent to which she was in pain."  *Id.*

16  Moreover, in the end, Dr. McDevitt's expert opinion was that Ms. Cornejo had no mental health

17  limitations other than moderate difficulties in maintaining social functioning outside of a Spanish-

18  speaking environment.  AR 818-21.  Dr. McDevitt found that she would have no restrictions in a

19  Spanish-speaking environment.  AR 823.  He based his opinion on the clinical findings by treating

20  psychologist Dr. Rosales.  AR 819-823.

21          The ALJ did not err in crediting Dr. McDevitt's conclusion that Ms. Cornejo's disability was

22  not severe enough to meet the listing criteria.  To the extent the ALJ erred by not specifically

23  addressing Dr. McDevitt's testimony regarding Ms. Cornejo's present pain behavior in his opinion,

24  such error was harmless in light of the ALJ's articulated adverse credibility findings as to Ms.

25  Cornejo's lack of treatment, as well as Dr. McDevitt's ultimate conclusion as to Ms. Cornejo's lack

26

27          [7]  This opinion is consistent with the later opinion of Dr. Balt, offered following the hearing
28  in September of 2012, and discussed in more detail *infra*.  Dr. Balt opined that with treatment, Ms.
    Cornejo's "psychiatric symptoms may resolve."  AR 789.

1    of mental health limitations.  *See Tommasetti v. Astrue,* 533 F.3d 1035, 1042 (9th Cir. 2008) (holding

2    that error is harmless when it is inconsequential to ultimate nondisability determination).

3            2.    <u>Drs. El-Sokkary & Salvador-Moses</u>

4            Ms. Cornejo also argues that the ALJ did not properly weigh Dr. El-Sokkary's opinion that

5    Ms. Cornejo would have difficulty in a competitive work setting because she struggled to maintain a

6    sufficient level of concentration, persistence, or pace.  AR 39, 599-600.  Similarly, Ms. Cornejo

7    argues that the ALJ did not properly weigh the opinion of Dr. Salvador-Moses, who similarly

8    assessed moderate to severe limitations in most areas, including severe impairment in concentration,

9    persistence, or pace.  AR 596-97.

10           The ALJ afforded little weight to the opinions of Drs. El-Sokkary and Salvador-Moses,

11   because he found that the documented clinical observations during the time of their evaluations, were

12   largely within normal limits, and did not support the limitations suggested.  AR 39-40.

13           In weighing the medical opinions, an ALJ may consider the claimant's level of daily activity

14   in discrediting a particular medical opinion where those activities are inconsistent with that opinion.

15   *See Rollins v. Massanari,* 261 F.3d 853, 856 (9th Cir. 2001) (concluding that ALJ adequately

16   provided reasons not to credit a medical opinion where, among other things, doctor's restrictions

17   were inconsistent with claimant's child care activities).  An ALJ may also consider a claimant's daily

18   activities in assessing the credibility of the claimant's pain allegations.  *See Fair v. Bowen,* 885 F.2d

19   597, 603 (9th Cir. 1989) ("[If] a claimant is able to perform household chores and other activities that

20   involve many of the same physical tasks as a particular type of job, it would not be farfetched for an

21   ALJ to conclude that the claimant's pain does not prevent the claimant from working.").  "The Social

22   Security Act does not require that claimants be utterly incapacitated to be eligible for benefits,"

23   however, "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the

24   performance of physical functions that are transferable to a work setting, a specific finding as to this

25   fact may be sufficient to discredit an allegation of disabling excess pain."  *Id.*

26           Drs. El-Sokkary and Salvador-Moses, among others, made clinical observations that were not

27   consistent with marked or severe limitations in functioning.  The ALJ noted the following from the

28

1  record, citing the clinical observations and findings of Drs. Salvador-Moses, El-Sokkary, Pon, Perez,

2  and Balt and worksheets completed by Ms. Wu:

> [Ms. Cornejo] reported that she can perform independent self-care,
> wash dishes, vacuum, sweep the floors, do laundry, go for walks, take
> her granddaughter to school, grocery shop on her own, and take care of
> herself.  She presented as well groomed and is able to manage money,
> use public transportation, cook, complete paperwork independently if
> assisted by a Spanish-speaking interpreter, and get along "very well"
> with her family and friends. . . . She was also able to take part "a lot"
> in social, religious, or recreation activities, demonstrating generally
> adequate capacity for social functioning.  The claimant "seemed
> capable of taking care of her own needs" and was capable of
> complet[ing] structured or routine daily tasks but preferred to rely on
> others.

AR 38 (record citations omitted).  The ALJ also specifically noted record evidence from Ms. Wu's

work with Ms. Cornejo that showed that Ms. Cornejo "was able to smile, laugh, and make jokes, and

she reported that she was able to sleep through the night, despite claims of insomnia."  AR 37.

Furthermore, Ms. Wu's records from 2012, which were specifically cited by the ALJ in his decision,

reflect that Ms. Cornejo's depression was rated a 4 out of 10.  AR 37; 767.

    In particular, the ALJ focused on the evidence in the record that shows that Ms. Cornejo spent

most of her time during the day providing child care for her toddler-age grandchild.  The ALJ

specifically found that such child care would be "a potentially physically and emotionally demanding

task."  AR 38.  In other words, the ALJ made clear findings that Ms. Cornejo's daily activities

required skills and functioning at a level inconsistent with Ms. Cornejo's alleged limitations.

Moreover, he cited evidence from the record that Ms. Cornejo spent a substantial portion of her day

engaged in such activities.  As a result, the ALJ's adverse credibility findings are adequately

supported by substantial evidence as to Ms. Cornejo's daily activities.  *See Morgan v. Comm'r of

Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999) (finding specific and substantial reasons

undermined claimant's credibility where record showed that claimant had the "ability to fix meals, do

laundry, work in the yard, and occasionally care for his friend's child"); *cf. Orn v. Astrue,* 495 F.3d

625, 639 (9th Cir. 2007) (finding no substantial evidence of transferability of occasional television

watching, reading, and coloring).

United States District Court
For the Northern District of California

1    Furthermore, Dr. McDevitt, like the ALJ, rejected Dr. El-Sokkary's assessment of Ms.

2    Cornejo's borderline cognitive functioning because Dr. El-Sokkary conducted the evaluation with the

3    aid of an interpreter, rather than directly in Spanish.  AR 829, 831.  Ms. Cornejo is a monolingual

4    Spanish speaker.  AR 817-18.  The record contains general comments which recommend treatment

5    by Spanish-speaking providers.  *See, e.g.,* AR 370; 375 (recommending Spanish-speaking physical

6    therapist).  In contrast to Dr. El-Sokkary, Dr. Rosales, a Spanish-speaking psychologist, made

7    repeated clinical findings, over the course of a year of sustained treatment, that Ms. Cornejo exhibited

8    cognitive functioning within normal limits.  AR 40, citing AR 333-37.

9    The ALJ did not err in crediting Dr. McDevitt's opinion, which relied on Dr. Rosales's

10   findings as a treating psychologist who evaluated Ms. Cornejo in Spanish rather than on Dr. El-

11   Sokkary's findings.  For the reasons stated above, the ALJ did not err in affording little weight to

12   Drs. El-Sokkary and Salvador-Moses; the ALJ listed specific examples of evidence in the record that

13   suggested that their assessment of marked impairment was contradicted by the record.  *See Morgan,*

14   169 F.3d at 600-01 (finding substantial evidence supported ALJ's rejection of doctor's opinion as to

15   functional deficits where the doctor assessed the claimant "as engaging and cooperative, with a sense

16   of humor and a good ability to express himself" as well as "adequately groomed and punctual for his

17   appointments.").

18           3.      Drs. Rapp & Perez

19   Ms. Cornejo was also evaluated by treating primary care physician, Dr. Rapp, and treating

20   psychologist, Dr. Perez.  In May 2012, Dr. Rapp opined that Ms. Cornejo's capacity to work was

21   markedly reduced due to the cumulative impact of her physical and mental health conditions.  AR 38,

22   782.  Both Drs. Rapp and Perez noted that Ms. Cornejo's pain was likely to affect her concentration,

23   persistence, and pace enough to interfere seriously with her ability to perform simple, routine work.

24   AR 764, 779-80.

25   Specific findings as to the lack of credibility of a claimant's complaints and contradicting

26   prior medical opinions can provide legitimate reasons to reject even a treating physician's opinion

27   where those opinions are predicated on those complaints or on other assumptions not supported by

28   the clinical evidence.  *See Edlund,* 253 F.3d at 1157.  In this case, the ALJ credited Dr. Rapp's

United States District Court

For the Northern District of California

1    findings as to Ms. Cornejo's physical limitations.  On the other hand, the ALJ gave little weight to

2    Dr. Rapp's mental health evaluation.  The ALJ specifically cited contemporaneous clinical findings

3    by mental health specialists that suggested greater mental functioning than Dr. Rapp assessed.  AR

4    38-39.

5         As a general matter, Dr. Rapp's opinion merits less weight than other "treating physicians,"

6    because although Dr. Rapp was Ms. Cornejo's primary care physician, the record does not suggest

7    that Dr. Rapp ever treated Ms. Cornejo for mental health issues or had the expertise to do so.  *See* 20

8    C.F.R. § 404.1527(c).  Indeed, Dr. Rapp, in his evaluation, cited the need for a psychiatrist to conduct

9    the evaluation and referred to the treatment provided by Ms. Wu.  As discussed above, the ALJ

10   specifically cited Ms. Wu's clinical findings in his discussion of evidence that does *not* support the

11   limitations alleged by Ms. Cornejo or any marked mental health limitation assessed by Dr. Rapp.

12        Turning from Dr. Rapp to Dr. Perez, the treating psychologist who examined Ms. Cornejo

13   after the hearing, in a similar vein, the ALJ found that Dr. Perez's opinions were inconsistent with the

14   record evidence.  AR 39-40.  As discussed, *supra,* the ALJ cited Ms. Cornejo's clinical presentation,

15   as well as her intact daily activities.  *Id.*  Dr. Perez's opinion also is inconsistent with the clinical

16   findings of Dr. Balt that followed shortly after Dr. Perez wrote his opinion.  If "medical reports are

17   inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely

18   of the Secretary."  *Magallanes,* 881 F.2d at 751.  Thus, while Dr. Balt is a nontreating examining

19   expert, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a

20   nontreating source is based on independent clinical findings that differ from those of the treating

21   physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely

22   the province of the ALJ to resolve the conflict."  *Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir.

23   1995).  As discussed by the ALJ in his decision, Dr. Balt found only mild to moderate impairments.

24   AR 40.  Dr. Balt made his assessment based on detailed independent clinical findings through, among

25   other things, independent tests of scenarios, review of Ms. Cornejo's history, and other questioning.

26   AR 785-89.  Dr. Balt specifically noted that Ms. Cornejo's psychiatric symptoms may resolve with

27   treatment more aggressive than the "limited" psychiatric treatment she had received thus far.  *Id.*

28

United States District Court
For the Northern District of California

1    Dr. Perez was a treating psychologist, but the record reflects that he had been treating Ms.

2    Cornejo for only one month at the time he wrote his evaluation.  AR 778-79.  Thus, the ALJ was

3    entitled to afford Dr. Perez's opinion less weight.  *See Garrison,* 759 F.3d at 1023 n.11; 20 C.F.R. §

4    404.1527(c).  Moreover, Dr. Perez's opinion offers comparatively few clinical observations in a

5    relatively conclusory fashion.  For example, Dr. Perez supported his opinion that Ms. Cornejo had

6    marked impairment in social functioning by noting that Ms. Cornejo "does not participate in social

7    activities."  Similarly, Dr. Perez supported his opinion that Ms. Cornejo had marked limitations in

8    concentration, persistence, and pace, by noting that Ms. Cornejo "can't focus or concentrate."  AR

9    779.  But these conclusory observations are not supported by specific findings or records.  The ALJ

10   was entitled to give little weight to such brief, conclusory comments.  *See Thomas*, 278 F.3d at 957.

11   This is particularly true given the extensive evidence in the record that undermines those findings,

12   including – as discussed in the ALJ's opinion – Dr. Balt's independent clinical findings as well as Dr.

13   Perez's finding that Ms. Cornejo was "able to complete structured or routine daily tasks."  AR 38;

14   779.  The ALJ's decision to afford little weight to Dr. Perez's opinion as to moderate and marked

15   limitations was therefore supported by substantial evidence in the form of contradictory documented

16   clinical observations by Dr. Balt.  *See Magallanes,* 881 F.2d at 751 ("To the extent that the

17   nontreating physician's opinion rests on objective clinical tests, it must be viewed as substantial

18   evidence." (citations omitted)); *see also Morgan,* 169 F.3d at 600-01.

19       The ALJ's findings as to the opinions of Drs. Rapp and Perez stem from specific citations to

20   ample and consistent evidence in the voluminous administrative record.  The ALJ found that Ms.

21   Cornejo's clinical presentation and daily activities demonstrate that she was more functional than the

22   limitations alleged by Ms. Cornejo and assessed in certain controverted medical opinions.  The ALJ

23   resolved conflict by specifically citing particular clinical findings and weighing the opinions

24   accordingly.  The ALJ's treatment of the mental health opinions was not in error.

25   ///

26   ///

27   ///

28   ///

21

### III.   CONCLUSION

For the foregoing reasons, Ms. Cornejo's motion for summary judgment is **DENIED** and the Commissioner's motion for summary judgment, which is technically unopposed, is **GRANTED**.

This order disposes of Docket Nos. 18 and 20.  The Clerk shall enter Judgment for the Defendant and close the case file.


IT IS SO ORDERED.


Dated:  November 10, 2014

_____
EDWARD M. CHEN
United States District Judge